CENTER FOR DISABILITY ACCESS
Mark Potter, SBN 166317
Phyl Grace, Esq., SBN 171771
Christopher Seabock, SBN 279640
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Robert Elguezabal**, <br><br>  Plaintiff, <br><br> v. <br><br> **Festival Fun Parks, LLC,** a Delaware Limited Liability Company; and Does 1-10, <br><br>  Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Robert Elguezabal complains of Defendants Festival Fun Parks, LLC, a Delaware Limited Liability Company; and Does 1-10, ("Defendants") and alleges as follows:

**PARTIES**:

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a paraplegic who cannot walk. He uses a wheelchair for mobility.

2. Defendants are, or were at the time of the incidents, the real property

Complaint

owners, business operators, lessors and/or lessees for Boomers located at or about 1500 W. 7th Street, Upland, California.

3.   Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

4.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5.   Pursuant to pendant jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

7. Boomers is a business establishment and place of public accommodation.

8. The site contains several miniature golf courses as well as rides, go karts, a game arcade and a snack bar. Unfortunately, the facilities are not accessible to wheelchair users.

9. Parking spaces are one of the facilities, privileges and advantages offered by defendants to their customers at Boomers.

10. Unfortunately, many of the parking spaces near the Be Bop Café are not accessible to customers because of inaccessible slopes in the parking lot that are greater than 2.2%.

11. Additionally, slopes of curb ramps near those parking spaces near the Café are in excess of 8.33%, which is a violation of the law.

12. Many of the access aisles, meanwhile, lack a "NO PARKING" warning, meaning that other customers can park in the access aisles with impunity.

13. Restrooms are one of the facilities, privileges and advantages offered by defendants to their customers at Boomers.

14. Unfortunately, even though a restroom is provided in the main area of Boomers, where the arcade is located, persons with disabilities are directed to use a restroom in the Be Bop Café, which is located in another building. There is no accessible restroom in the building where patrons enter to play golf and arcade games. This is a violation of the law.

15. In the restroom at the Be Bop Café the facilities are not compliant. The toilet stall is improperly configured and too small for wheelchair users, measuring 42 inches in width and 90 inches in depth.

16. The plumbing underneath the sink is not wrapped to protect against burning contact.

17. Plaintiff personally encountered the unlawful barriers at Boomers. In encountering and dealing with the lack of accessible facilities, the plaintiff experienced difficulty and discomfort. This violation denied the plaintiff full and equal access to facilities, privileges and accommodations offered by the

Complaint

defendants.

18. Meanwhile, there are no 9-consecutive-hole sets that are accessible to wheelchair users at any of the courses.  Although many of the start of play areas measure 48" x 60" at individual holes, the ground slope exceeds 1:48 at many locations.  Numerous areas on most holes where golf balls rest are beyond 36 inches of the perimeter of the hole, and very few areas measuring 36" x 48" with a running slope of 1:20 maximum are provided adjacent to any of the holes.

19. The concrete walkways adjacent to most holes are not 36" wide. Ramps slopes at many location exceed 1:12 and exceeded 4 inches in rise. Even if accessible routes were provided adjacent to a minimum of 9 holes, the curb height between the playing surface at most holes and the existing walkways exceeded 1 inch.

20. The plaintiff lives about 25 minutes from the Boomers facilities and is in the area on a consistent and ongoing basis. He went to the facility in October of 2013 to play in the arcade and generally partake of activities at the facility with his friends. He has wanted to return and enjoy the miniature golf facilities on occasions since then, but has been deterred from attempting to do so because of his personal knowledge of the barriers.

21. Additionally, on information and belief, the plaintiff alleges that the failure to remove the barrier was intentional because: (1) this particular barrier is intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because had the defendants intended any other configuration, they had the means and ability to make the change.

Complaint

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

22. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

23. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the accessibility standards found at 28 C.F.R., Part 36, Appendix "D" sometimes called the "ADAAG" and referred to in this complaint as the "1991 Standards".

   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains

serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

24. The US Department of Justice (DOJ) adopted new design standards in 2010, which incorporated the 2004 ADA/ABA Accessibility Guidelines ("2010 Standards"). These new guidelines addressed recreational facilities such as miniature golf courses, which were not included in the previous standards, the 1991 ADA Accessibility Guidelines ("1991 Standards"). Under the Code of Federal Regulations, because neither scoping nor technical requirements for miniature golf facilities were included in the 1991 Standards, Boomers would be required to remove barriers that are Readily Achievable. See 28 U.S.C. § 36.304(d)(2).

25. Under the ADA, at least 50% of holes on miniature golf courses must be accessible to wheelchair users. 2010 Standards § 239.2. Miniature golf courses must be configured so that the accessible holes are consecutive. 2010 Standards § 239.3. Miniature golf courses must provide an accessible route from the last accessible hole to the course entrance or exit without requiring travel through any other holes on the course. *Id.* Where accessible routes intersect playing surfaces of holes, no more than 1 inch maximum curb is permitted for a width of 32 inches minimum. 2010 Standards § 1007.2(2). The slope cannot exceed 1:4 with a 4 inch maximum rise. 2010 Standards § 1007.2(3). Ramp landing slopes cannot exceed 1:20. 2010 Standards § 1007.2(4). A clear floor or ground space 48 inches minimum by 60 inches minimum with slopes not steeper than 1:48 must be provided at the start of play. 2010 Standards § 1007.3.1. All areas within holes where golf balls rest must be within 36 inches maximum of a clear floor or ground space 36 inches wide minimum and 48 inches long minimum having a running slope not steeper than 1:20. 2010 Standards § 1007.3.2.

26. Here, the failure of the defendants to provide accessible golfing

Complaint

facilities in compliance these standards is a violation of the law.

27. Where a toilet stall is provided in a restroom in existing facilities, the size and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide front transfer grab bars or (2) be at least 48 inches wide by at least by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b).

28. Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

29. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

30. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

31. Given its location and options, Boomers is a business that the plaintiff would like to patronize on a regular and ongoing basis but he has been and will continue to be discriminated against due to the lack of accessible facilities.

Complaint

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiffs and against all defendants) (Cal Civ § 51-53)

32. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

33. Because the defendants violated the plaintiffs' rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

34. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiffs, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiffs are not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000.

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: March 15, 2015          CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint